[No. C002415. Third Dist. Jan. 27, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH D. PALMER, Defendant and Appellant.

**COUNSEL**

Donna M. Cropp, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Eddie T. Keller and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—In *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], the United States Supreme court held that evidence seized pursuant to the service of an invalid *search* warrant need not be suppressed where police officers serving the warrant relied on its validity in objectively reasonable good faith. (*Id.,* at pp. 916, 922 [82 L.Ed.2d at pp. 694, 698].) ■ The rule of *Leon* applies in California state courts to determine whether evidence seized pursuant to a *search* warrant should be suppressed. (Cal.

Const., art. I, § 28, subd. (d); *In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]; *People v. Helmquist* (1984) 161 Cal.App.3d 609, 612-616 [207 Cal.Rptr. 718].) In this case, we hold that *Leon*'s rule applies to the service of an *arrest* warrant. We also hold that, even assuming the warrant was invalid, the officers relied on it in objective good faith because California judicial authority, extant when the warrant was served, suggested it was valid.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose from an underlying criminal action styled People v. Raphael Julius Anderson, Butte County Justice Court No. CR-47104.[1] (Hereafter *Anderson.*) In that case the district attorney issued a subpoena commanding Kenneth Palmer, the defendant in this case, to testify as a witness at 10:30 a.m. on November 14, 1985, in Oroville. The subpoena was served on defendant in Oroville one hour and 25 minutes before the time for his appearance stated in the subpoena.

Defendant did not appear as ordered. A declaration under penalty of perjury showing service of the subpoena was filed and, at the district attorney's request, the justice court issued a bench warrant for defendant's arrest. The *Anderson* matter was promptly dismissed and the accused was discharged.

After service of the bench warrant could not be effected in the time prescribed in the warrant, the warrant was reissued in the form set forth in Appendix A, *post.*

On June 17, 1986, Butte County Sheriff's Civil Deputy Warren Munroe and three other deputies arrived at defendant's residence to serve the reissued bench warrant. Munroe requested the other deputies' assistance because defendant was known to keep numerous weapons in his possession.

One of the assisting deputies was Grant Johnson who had known defendant for the previous 18 months. Johnson had previously contacted defendant at his residence on several occasions.

When the officers arrived at defendant's residence Johnson knocked on the door and identified himself as "Deputy Johnson." Defendant said, "Come on in." Johnson did so and went inside accompanied by the other deputies.

---

[1] Pertinent portions of the record in that action were judicially noticed at defendant's preliminary examination and at the suppression hearing in superior court. (Evid. Code, § 452, subd. (d)(1).) We do likewise. (Evid. Code, § 459, subd. (a)(1).)

Munroe began explaining the reason for the officers' presence. At that point Johnson observed what appeared to be a sawed-off shotgun on the coffee table next to where defendant was reclining on the couch. Johnson confiscated the gun which proved to be loaded.

Defendant was advised of his *Miranda*[2] rights. Deputy Krampitz asked defendant if he would mind if the officers looked around the house. Defendant told the officers they could look around all they wanted.

In an upstairs bedroom Munroe found a second sawed-off shotgun and defendant was arrested. He was charged in two counts with unlawful possession of the sawed-off shotguns. (Pen. Code, § 12020, subd. (a); statutory references are to this code unless otherwise noted.)

The People ultimately decided not to pursue any contempt charge against defendant premised on his failure to appear as a witness in the *Anderson* matter.

At his preliminary examination on the instant offenses defendant made a section 1538.5 motion to suppress the shotguns as the fruit of an unlawful arrest. The officers involved in the arrest testified the arrest was made upon the authority of the bench warrant. Defendant contended the bench warrant was defective because there was no affidavit detailing why he was allegedly in contempt of court. The magistrate denied the motion and held defendant to answer in superior court.

In superior court defendant renewed his section 1538.5 motion[3] and moved to set aside the information (§ 995). The People opposed the motions contending that even if the bench warrant was defective the officers' reliance thereon was in good faith, so that under *Leon* suppression of the evidence was not required.[4] The trial court found the bench warrant defective but relied on *Leon* to deny defendant's motions. Defendant then entered a

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3]The notice of the section 1538.5 motion failed to state that the motion would be made on the basis of the preliminary hearing transcript. Although defendant's moving papers requested judicial notice of the *Anderson* file (see fn. 1, *ante*) they did not request judicial notice of the preliminary hearing transcript in the instant matter. However, at the hearing on defendant's section 1538.5 motion, no testimony was taken and the record shows that both counsel and the trial court assumed the motion was premised in part on the transcript of the preliminary hearing. Since neither party raises this issue on appeal, we shall proceed in accordance with the understanding of trial and appellate counsel and the trial court, i.e., that the section 1538.5 motion was premised in part on testimony reflected in the preliminary hearing transcript.

[4]The People did not rely on defendant's consent to justify entry into the house. (See fn. 7, *post*.)

negotiated plea of no contest to one count of possession of a sawed-off shotgun (§ 12020, subd. (a)).

On appeal to this court (§ 1538.5, subd. (m)) defendant argues his section 1538.5 motion was improperly denied. He renews his contention the bench warrant was defective because (1) the underlying *Anderson* action having terminated, defendant could no longer be brought to court to testify and (2) if the arrest was to punish defendant for contempt, the warrant had to be (but was not) supported by an affidavit detailing his contemptuous conduct. Defendant also contends *Leon*'s good faith exception to the exclusionary rule is inapplicable to cases such as this involving arrest rather than search warrants. Finally, defendant contends that, assuming *Leon* governs, the officers had no objectively reasonable belief the warrant was valid. We shall affirm the judgment.

DISCUSSION

I

*The Trial Court Properly Applied United States v. Leon to This Entry Under an Arrest Warrant.*

■ We first consider defendant's contention the trial court erroneously applied *Leon* to this case involving an arrest warrant. Two California Courts of Appeal have assumed without analysis that *Leon* applies to the service of an arrest warrant. (See *People* v. *Ramirez* (1988) 202 Cal.App.3d 425, 428 [248 Cal.Rptr. 396]; *People* v. *Dickens* (1984) 163 Cal.App.3d 377, 381, fns. 3 and 4 [208 Cal.Rptr. 751].) For reasons that follow, we shall endorse the assumption.

In *Leon* the United States Supreme Court concluded "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." (*Leon, supra,* 468 U.S. at p. 922 [82 L.Ed.2d at p. 698].) The court explained that exclusion cannot be justified on the basis of its behavioral effect on the judges and magistrates who issue invalid warrants because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." (*id.,* at p. 916 [82 L.Ed.2d at p. 694].) The court also explained that, where an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and has acted within its scope, " 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.

Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' " (*Id.*, at p. 920 [82 L.Ed.2d at p. 697], quoting *Stone* v. *Powell* (1976) 428 U.S. 465, 539-540 [49 L.Ed.2d 1067, 1114, 96 S.Ct. 3037], dis. opn. of White, J.)

These considerations apply equally to arrest warrants. Excluding evidence obtained incident to an arrest under a subsequently invalidated arrest warrant cannot be justified by the deterrent effect on the issuing judge or magistrate because the exclusionary rule is not designed to punish judicial error. (468 U.S. at p. 916 [82 L.Ed.2d at p. 694].) Nor can exclusion be justified by its deterrent effect on the law enforcement officer because, by obtaining an arrest warrant and faithfully following its terms, the officer has acted as he is supposed to act. (*Id.*, at p. 920 [82 L.Ed.2d at p. 697].)

Citing *Steagald* v. *United States* (1981) 451 U.S. 204 [68 L.Ed.2d 38, 101 S.Ct. 1642], defendant contends, however, the interests protected by arrest warrants and by search warrants differ. As explained in *Steagald,* an arrest warrant "primarily serves to protect an individual from an unreasonable seizure" while a search warrant "safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." (P. 213 [68 L.Ed.2d at p. 46].) Defendant thus contends the paramount liberty interest protected by the arrest warrant requires greater protection from police misconduct than does the interest protected by the search warrant. Defendant overlooks the fact that *Leon* would not sanction police misconduct in either context. Rather, *Leon*'s exception to the exclusionary rule operates *only* where police conduct is objectively reasonable and does not constitute misconduct. (*Leon, supra,* 468 U.S. at pp. 918-923 [82 L.Ed.2d at pp. 695-699].) Defendant's argument is not well taken.

Defendant also relies on the dissenting opinion in *People* v. *Neer* (1986) 177 Cal.App.3d 991, 1001-1012 [223 Cal.Rptr. 555]. There, the dissenting justice argued that the majority had erred in concluding evidence seized with a search warrant had to be suppressed for an asserted failure to comply with the knock-notice requirements of section 1531.[5] (*Id.,* at p. 1006.) The dissent also argued the case should be remanded to the trial court for a further section 1538.5 hearing on the question whether the officers had relied on the search warrant in good faith. (*Id.,* at p. 1012.) We find nothing in the dissenting opinion which bears upon the question whether arrest warrants are subject to the principles of *Leon.*

In *U.S.* v. *Mims* (8th Cir. 1987) 812 F.2d 1068 the Eighth Circuit Court of Appeals recently applied *Leon* in refusing to suppress the fruits of a

---

[5] Defendant cites this dissenting opinion in aid of his argument that *Leon* does not apply to the service of arrest warrants. Defendant has made no contention in the trial court, nor here, that service of the warrant was defective under knock-notice requirements.

search incident to an arrest where the arrest warrant's affidavit failed to establish probable cause. (Pp. 1072-1073.) In line with the Eighth Circuit, we hold that *Leon*'s exception to the exclusionary rule applies to arrest warrants as well as to search warrants. The trial court correctly ruled that *Leon* applied to this case.

## II

*The Trial Court Properly Declined to Suppress the Fruits of the Search Incident to Defendant's Arrest.*

We next consider whether the trial court properly declined to suppress the fruits of the search incident to defendant's arrest. In considering this question we shall assume for purposes of argument that the bench warrant was technically defective as the trial court found. Under *Leon,* the controlling question is whether the officers' reliance on the warrant was objectively reasonable. (*Leon, supra,* 468 U.S. at p. 922 [82 L.Ed.2d at p. 698]; *People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1213-1221 [252 Cal.Rptr. 739]; *Rodriguez* v. *Superior Court* (1988) 199 Cal.App.3d 1453, 1465-1467 [245 Cal.Rptr. 617].)

Defendant's principal assertion of bad faith is that the officer primarily charged with service of the warrant testified he knew it was not supported by an "affidavit" describing defendant's contemptuous conduct.[6] However, for reasons that follow, we think the officer could reasonably conclude no affidavit detailing the circumstances of defendant's failure to honor the subpoena was required for issuance of the warrant.

Although the warrant at issue mentions punishment for contempt, it is boldly captioned: "BENCH WARRANT (Civil)." (See appen. A, *post.*) It specifically says defendant failed to obey a subpoena. (*Ibid.*) The warrant therefore closely resembles a warrant issued pursuant to Code of Civil Procedure section 1993, which provides: "In case of failure of a witness to attend, the court or officer issuing the subpoena, upon proof of the service thereof, and of the failure of the witness, may issue a warrant to the sheriff of the county to arrest the witness and bring him before the court or officer where his attendance was required."

Such a warrant is commonly called a "bench warrant." (*Silvagni* v. *Superior Court* (1958) 157 Cal.App.2d 287, 290 [321 P.2d 15].) Although expressly described in the Code of Civil Procedure, such a bench warrant to

---

[6]The officer was not asked whether he knew a proof of service of the subpoena had been filed.

compel the attendance of a witness constitutes valid process in a criminal proceeding for reasons explained in *People* v. *Brinson* (1961) 191 Cal.App.2d 253, 258 [12 Cal.Rptr. 625] (cert. den. 369 U.S. 876 [8 L.Ed.2d 279, 82 S.Ct. 1147], cert. den. 371 U.S. 873 [9 L.Ed.2d 110, 83 S.Ct. 136]): "The Penal Code provisions relating to subpoenas (Pen. Code, §§ 1326-1332) do not contain any provision for the issuance of a warrant or attachment to compel the attendance of a subpoenaed witness who does not appear, as is provided in Code of Civil Procedure, sections 1993, 1994, in relation to civil actions. However, Penal Code section 1332, dealing with forfeiture of the undertaking given by a witness to assure his appearance, seems to contemplate a similar procedure. Sections 878-882 of the Penal Code, which do provide for such a procedure, on their face deal only with the powers of a committing magistrate who holds the defendant to answer, and then only with a material witness examined before the magistrate on the part of the People. (Pen. Code, § 878.)

"We think that, whether such a procedure is provided for in the Penal Code or not, the court has power, in carrying out its duty under article I, section 13, of the Constitution to assure to the defendant 'the process of the court to compel the attendance of witnesses in his behalf' to utilize a similar procedure to that provided for in Code of Civil Procedure, sections 1993, 1994. Such power was recognized by our Supreme Court as long ago as 1886, in *People* v. *Marseiler,* 70 Cal. 98 [11 P. 503]. See also *People* v. *Bossert* (1910), 14 Cal.App. 111 [111 P. 15], where the matter is discussed at length, and the court reversed because the trial court refused to issue a bench warrant to compel the attendance of defendant's witnesses." (*Brinson, supra,* at p. 258.)

Code of Civil Procedure section 1993 requires that a bench warrant to compel the attendance of a witness may issue "upon proof of the service" of a subpoena. The statute doubtless contemplates that such proof will ordinarily be made by affidavit (Code Civ. Proc., §§ 2003, 2009) or declaration under penalty of perjury (Code Civ. Proc., § 2015.5). ▮ Assuming these requirements apply to the nonstatutory bench warrant at issue here, issuance of the warrant was in fact supported by a declaration under penalty of perjury showing the time and place of service of the subpoena on defendant. No California statute requires that a bench warrant be supported by a more detailed affidavit where its purpose is to bring a witness to court to testify. Nor does the federal Constitution. In *McGrain* v. *Daugherty* (1927) 273 U.S. 135 [71 L.Ed. 580, 47 S.Ct. 319, 50 A.L.R. 1] the United States Supreme Court considered the power of Congress to arrest a subpoenaed witness who had failed to appear before a congressional committee. There the Senate issued a warrant commanding that the witness be taken into custody and brought "before the bar of the Senate, then and there to

answer . . . questions pertinent to the matter under inquiry . . . ." (*Id.*, at p. 153 [71 L.Ed. at p. 584].) The witness challenged his arrest under the provision of the Fourth Amendment declaring that "'no warrants shall issue but upon probable cause supported by oath or affirmation'" and contended his arrest warrant was void because the committee's report detailing his nonappearance was unsworn. (*Id.*, at p. 156 [71 L.Ed. at p. 585].)

The court rejected the witness's contention explaining first that the committee was a part of the Senate and operated under its member's oaths of office as Senators. (273 U.S. at pp. 156-157 [71 L.Ed. at pp. 585-586].) The court went on to explain that "The principle underlying the legislative practice has also been recognized and applied in judicial proceedings. This is illustrated by the settled rulings that courts in dealing with contempts committed in their presence may order commitments without other proof than their own knowledge of the occurrence, and that they may issue attachments, based on their own knowledge of the default, where intended witnesses or jurors fail to appear in obedience to process shown by the officer's return to have been duly served." (*Id.*, at p. 157 [71 L.Ed. at p. 586], fns. omitted.) The court noted other examples from grand jury practice. (*Id.*, at pp. 157-158 [71 L.Ed. at p. 586]; see also *In re Grand Jury Proceedings Harrisburg Grand Jury* (3d Cir. 1981) 658 F.2d 211, 215; *United States* v. *Evans* (6th Cir. 1978) 574 F.2d 352, 355.) Thus, to the extent the warrant in the instant case sought to compel the attendance of a witness to give testimony, a supporting affidavit describing the circumstances of the witnesses' failure to attend was not required. (*Ibid.*)

Defendant correctly points out that the trial court's power to compel a witness to attend proceedings to give testimony ends when the proceeding is dismissed; at that juncture, the trial court must punish the errant witness for criminal contempt or not at all. (See *Morelli* v. *Superior Court* (1969) 1 Cal.3d 328, 332, 333 [82 Cal.Rptr. 375, 461 P.2d 655]; *Silvagni* v. *Superior Court, supra,* 157 Cal.App.2d at p. 290). Defendant argues that because the *Anderson* matter had been dismissed by the time the warrant was reissued, the warrant could not lawfully be one to compel defendant's attendance as a witness.

Although the contention is correct, it is unavailing. Nothing on the face of the warrant shows the *Anderson* case had been dismissed. Nor does the record suggest that any of the officers who served the warrant knew of the dismissal. Hence, the dismissal does not diminish the officers' good faith reliance on the warrant.

Defendant also argues the warrant had to be supported by an affidavit describing defendant's contemptuous conduct because the warrant stated on

its face defendant faced possible punishment for contempt. For this proposition defendant cites *Lund* v. *Superior Court* (1964) 61 Cal.2d 698 [39 Cal.Rptr. 891, 394 P.2d 707], where the court concluded "Neither *warrant* nor order to show cause may issue except on proper affidavit setting forth the full facts of the alleged contempt . . . ." (P. 713, italics added.)

However, as *Lund* expressly states (61 Cal.2d at p. 713) and as defendant acknowledges in his brief, *Lund*'s rule is premised on the requirements of Code of Civil Procedure sections 1211 and 1212 involving *in*direct contempts.

■ Contempts may be direct or indirect. "The basic distinction between direct and indirect contempt is that direct contempt is committed in the presence of the court while indirect, or constructive, contempt is committed outside the presence of the court." (*In re McKinney* (1968) 70 Cal.2d 8, 10, fn. 2 [73 Cal.Rptr. 580, 447 P.2d 972].)

Where a contempt is direct, "committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; . . ." (Code Civ. Proc., § 1211.)

However, where the contempt is indirect, where it "is not committed in the immediate view and presence of the court, or of the judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." (Code Civ. Proc., § 1211.)

■ Defendant asserts his contempt was indirect, so that an affidavit was required for issuance of a warrant, because although his absence from the courtroom was evident to the court the reason for his absence was not. He asserts a reasonably well-trained civil deputy should have known an affidavit was required, so Deputy Munroe could not have relied on the warrant in good faith. We cannot agree.

Witkin has aptly termed the distinction between direct and indirect contempt "difficult." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 182, p. 180.) We are unaware of any California authority squarely deciding whether a witness who refuses to honor a trial subpoena is subject to direct or indirect contempt, or whether an affidavit describing the contempt is required for the issuance of a warrant for the arrest of the witness. However, extant judicial authority involving attorneys who fail to appear in court suggests that an analogous failure of a subpoenaed witness may be treated as a direct contempt.

In *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755 [278 P.2d 681] the majority held that an attorney's failure to appear was " 'a contempt . . .

committed in the immediate view and presence of the court'—i.e., a direct contempt—which the court is empowered to punish summarily under the provisions of section 1211 of the Code of Civil Procedure." *(Id.,* at p. 759.) The dissenting opinion urged the argument made by defendant here. It pointed out that direct contempt "may be punished summarily because the conduct concerned, and all of it, took place where the court heard and saw it, hence the court is in a position to act summarily, as all the facts involved are within his *[sic]* cognizance, . . . Here such conditions do not exist. The only fact that the court knew about was that petitioner did not appear at the trial. It did not know whether that failure was due to circumstances beyond petitioner's control or was inexcusable neglect or wilful refusal to attend the trial. Without those facts, all of which occurred away from the court, and out of its sight and hearing, it was not in a position to ascertain whether there was contempt." *(Id.,* at pp. 763-764, dis. opn. of Carter, J.)

*Lyons* was followed by *Chula* v. *Superior Court* (1962) 57 Cal.2d 199 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421] in which the majority held an attorney's failure timely to appear without valid excuse was direct contempt. (P. 203.) Chief Justice Gibson's concurring opinion termed this situation of an attorney's failure to appear a "hybrid": "the charge of contempt arose from events occurring in the presence of the court which it is claimed should be excused by matters taking place outside the courtroom." *(Id.,* at p. 207.) The concurring opinion rejected the notion that the failure to appear must be treated as indirect contempt; rather, "the rights of the attorney will be fully protected by an order to show cause apprising him of the charge against him followed by an opportunity to be heard. If the attorney claims that his conduct is excusable, he is entitled to a hearing where he may offer evidence." *(Ibid.)*

In *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404 [42 Cal.Rptr. 441, 398 P.2d 777] the court followed the *Chula* concurrence. It limited *indirect* contempt to situations where "virtually none of the facts involved in the alleged contempt have occurred in the judge's presence but have arisen entirely outside the courtroom." *(Id.,* at p. 408.) The court explained that "Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain." *(Id.,* at p. 409; see also *In re Baroldi* (1987) 189 Cal.App.3d 101, 106-107 [234 Cal.Rptr. 286].)

To be sure, these cases involve attorneys, not witnesses. However, we need not determine whether a detailed affidavit is legally required for issuance of a warrant for the arrest of a subpoenaed witness who faces criminal

contempt charges for failure to appear at trial. The authorities discussed above—and particularly *Arthur* v. *Superior Court, supra,* 62 Cal.2d at page 408—plainly suggest defendant's contempt was direct so that no affidavit other than a proof of service of the subpoena was required. That is sufficient to show the officers' objective good faith reliance on the warrant. Police officers are entitled to rely upon the authority of their state courts until the authority is shown to be wrong under some recognized procedure. (*Massachusetts* v. *Sheppard* (1984) 468 U.S. 981, 990 [82 L.Ed.2d 737, 744, 104 S.Ct. 3424].) Although the officers serving the warrant are held as a matter of law to possess the legal knowledge of "a reasonably well-trained officer" (*Leon, supra,* 468 U.S. at p. 922, fn. 23 [82 L.Ed.2d at p. 698]; *People* v. *Maestas, supra,* 204 Cal.App.3d at pp. 1218-1219), we cannot expect the officers to recognize what a "sophisticated lawyer" (*United States* v. *Mahoney* (5th Cir. 1983) 712 F.2d 956, 962) might have discerned about the legal underpinnings of the warrant. The officers cannot be faulted for acting consistently with the suggestion of extant California judicial authority on the issue.

Defendant contends, however, that even under a "direct contempt" analysis the officers should have known the warrant was invalid. He asserts a direct contempt order is valid only if it recites facts with sufficient particularity to demonstrate on its face that petitioner's conduct constituted a legal contempt. (Citing, e.g., *In re Buckley* (1973) 10 Cal.3d 237, 247 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].) This contention is unavailing because defendant has not been adjudicated in contempt. Neither the order authorizing the arrest warrant nor the warrant itself found defendant in contempt. Their sole function was to bring defendant into court where he could be confronted with the charge and given an opportunity to explain. (See appen. A, *post.*)

Finally defendant contends the warrant failed to comply with Code of Civil Procedure section 1994 which provides in pertinent part that "Every warrant of commitment, issued by a court or officer pursuant to this chapter, must specify therein, particularly, the cause of the commitment, . . ." Even assuming for purposes of argument this requirement applies to the subject warrant, the warrant recited that defendant had been subpoenaed to testify and had failed to obey the subpoena. (appen. A, *post.*) Thus, the warrant specified the cause of the commitment.

■ Because the officers relied on the warrant in objective good faith, the trial court properly declined to suppress the fruits of the search incident

to defendant's arrest. (*Leon, supra,* 468 U.S. at pp. 905-925 [82 L.Ed.2d at pp. 686-700].)[7]

DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., and Marler, J., concurred.

A petition for a rehearing was denied February 22, 1989, and appellant's petition for review by the Supreme Court was denied April 20, 1989.

---

[7]Thus, we need not consider the People's alternative argument, never advanced in the trial court, that the search was justified by defendant's consent. (But see *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33].)

## APPENDIX

APPENDIX ___A___

Warrant Under Which Defendant Was Arrested

Attorney(s) for _____
Space above for Name, Address and Telephone No. of Attorney(s)

Space above for use of Court Clerk only

### JUSTICE COURT OF CALIFORNIA, COUNTY OF BUTTE
### OROVILLE JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF CALIFORNIA
(Plaintiff)

No. CR 47104 Dept.

**BENCH WARRANT**
Civil

RAPHEAL·JULIUS ANDERSON
(Defendant)
(Abbreviated Title)

Judge Hon. Jerome E. Warren

THE PEOPLE OF THE STATE OF CALIFORNIA, to any Sheriff, Constable, Marshal or Police Officer in the State:

Greetings:

It appearing to this Court that a _____SUBPOENA_____ was duly served upon _____KENNETH PALMER_____ requiring ................ ... to appear before this Court on _____November 14, 1985_____, and the said person having failed to obey said _____SUBPOENA_____.

YOU ARE THEREFORE COMMANDED forthwith to arrest the above-named _____KENNETH PALMER_____ _____ and bring _____ before this Court to show cause why __HE__ should not be punished for contempt for disobeying·

The above-named person may be admitted to bail in the sum of $ 500.00 , to appear at 1:30 P. M. in Department No. One on the A Monday immediately following service hereof. If the defendant is not admitted to bail, he shall be forthwith brought to Court on the next preceding court day

If not served within ninety (90) days, return Bench Warrant to Court. Given under hand and the seal of said Court on _____

Date: April 14, 1986

(seal)

JUN 23 1986

~~FILED~~

JUDGE OF THE JUSTICE COURT
OROVILLE JUSTICE COURT
_____ CLERK

$ 500.00 Bail

Address of above-named person where service of Bench Warrant may be made:

3333 Myers, Oroville, CA _____ 131

_____EXHIBIT E_____