68 Cal.Rptr.3d 28 (2007)
156 Cal.App.4th 698
The PEOPLE, Plaintiff and Respondent,
v.
Henry Ivan COGSWELL, Defendant and Appellant.
No. D049038.
Court of Appeal of California, Fourth District, Division One.
October 31, 2007.
*31 Patricia A. Scott, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.
BENKE, Acting P.J.
Henry Ivan Cogswell was found guilty of three counts of forcible rape, one count of rape by a foreign object and one count of forcible oral copulation. It was found true Cogswell was previously convicted of forcible rape within the meaning of Penal Code[1] section 667.61, subdivisions (a), (c), (d), had served a prison term within the meaning of section 667.5, subdivision (a), was previously convicted on a felony within the meaning of section 667.6, subdivision (a), and was previously convicted of a serious felony within the meaning of sections 667, subdivision (a)(1), and 667, subdivisions (b) through (i).
Cogswell was sentenced to a term of 105 years in prison. He appeals, arguing the trial court erred in allowing the prior testimony of an absent witness to be admitted in evidence and in admitting evidence of his prior sexual assaults.

FACTS

A. Prosecution Case

1. Charged Offenses

On the afternoon of June 9, 2004, Lorene B., her sister and their children went to an apartment in San Marcos to see Lorene's friend Henrieta Cogswell (Henrieta). Appellant is Henrieta's brother. He also lived at the apartment. He told Lorene that Henrieta was not home. Lorene and the others returned to the home of Lorene's sister in Riverside.
Lorene met appellant on several occasions. Crystal G., the mother of appellant's two children, was Lorene's best friend. Lorene was aware Crystal and appellant broke up. Appellant, Lorene, Crystal and Henrieta were deaf and communicated by sign language.
On the evening of June 9, Lorene, by means of instant messages on her computer, communicated with someone she believed was Henrieta. In fact, the messages were sent by appellant. Later, Lorene also exchanged instant messages understanding she was communicating with appellant. Appellant begged Lorene to see him about a very important matter concerning their children.
Lorene, believing the matter was serious, left Riverside and drove to San Marcos. *32 She arrived at around midnight. Lorene parked her car in a lot at appellant's apartment and got out. Appellant approached her. Lorene asked if Henrieta was there. Appellant stated she was asleep. Appellant kissed Lorene on the mouth. When Lorene asked why he kissed her, appellant pushed her against the car. Lorene asked appellant if he was drunk and asked why he was treating her that way.
Appellant told Lorene they needed to talk and asked her to get into the car. Lorene got into the driver's seat. Appellant sat in the passenger seat. Lorene asked appellant why he kissed her and told him he should not have done so. When Lorene asked appellant what he wanted to talk about, he climbed on top of her and reclined the driver's seat. As Lorene resisted, appellant sexually assaulted her. Eventually appellant returned to the passenger seat, removed his clothes and told Lorene to undress. Afraid of appellant, Lorene removed her pants. Appellant grabbed Lorene and placed her in a straddling position above him. Appellant inserted his penis and finger into her vagina.
Lorene was able to climb into the back seat. Within a few moments appellant followed. Lorene told him she wanted to go home. Appellant told her she could "suck [his] penis." She did not want to. However, Lorene orally copulated appellant believing if she did he would let her go. When Lorene thought appellant fell asleep, she tried to get her clothes and leave. Appellant grabbed her, pinned her down and raped her again.
Lorene passed out. The next morning she awoke still in the car with appellant. Eventually the two dressed. Appellant drove the car to a bank and to a gas station. Appellant then drove back to his apartment complex. He told Lorene not to tell anyone what happened. Appellant climbed into the back seat and Lorene got out of the car. Appellant ordered Lorene to get back in the car. Afraid of appellant, she got in. Appellant raped her again. Appellant got out of the car and Lorene drove back to Riverside.
A few days later, Lorene e-mailed Crystal telling her she wanted to meet because someone raped her. Crystal guessed the attacker was appellant because he mentioned the rape a few days before. Lorene told Crystal it was difficult for her to report the rape because both she and appellant belonged to the small deaf community and because she knew appellant's family. Crystal suggested she, appellant and Lorene discuss the matter in an electronic chat room. They did so. Lorene, unsatisfied with the conversation, reported the sexual assault to the police.
On June 13, 2004, Sheriffs Detective David Schaller contacted appellant. The detective noticed appellant had a large bruise on his leg and scratches on his face, head, arms, hand, legs and back. Crystal told Lorene that appellant was abusive to her. However, Crystal did not think she ever told Lorene that appellant raped her.

2. Prior Uncharged Offenses

In 1996 Crystal met appellant at school in New York and they began a sexual relationship. A few weeks after the relationship began, appellant physically assaulted her. Crystal reported the assault to school authorities, and in November 1996 appellant was expelled. Crystal moved with appellant to his parent's home in New York. His violence toward her increased. Appellant's assaultive behavior was reported to the police. Crystal first moved to Texas, and in February 1997 she moved to San Diego.
In February 1997 Crystal called appellant and told him she was pregnant with *33 his child. Crystal agreed to see appellant. Because she was afraid of him, she asked him to bring someone with him. On February 6 or 7, 1997, appellant came to Crystal's apartment with his cousin Roy. Appellant told Crystal she had the choice of having sex with him or being abused. Crystal asked appellant to go for a walk hoping he would cool off. Appellant agreed. During the walk, appellant demanded Crystal have sex with him and told her to take off her pants. Afraid he would hurt her if she resisted, Crystal removed her pants and appellant raped her.
Crystal and appellant went with Roy to Roy's parent's house in Riverside. The next day, Crystal and appellant drove back to San Diego. During the drive, appellant stopped in a parking lot, hit Crystal in the head and ordered her to have sex with him. Crystal removed her pants and appellant raped her.
On arriving in San Diego, Crystal could not get into her apartment so she and appellant remained in the car. While in the car, appellant again ordered Crystal to have sex with him. Fearful of appellant, she orally copulated him. She then removed her clothes. Appellant raped her. Later that day, appellant raped Crystal again.
Crystal reported the rapes to her prenatal counselor. The counselor reported the crimes to the police and appellant was arrested. Appellant called Crystal from jail and asked her to say she had not been raped but only sexually harassed. At appellant's trial on those charges, Crystal recanted the claim of rape and testified appellant sexually harassed her. Appellant, nonetheless, was convicted of rape. Crystal later, at a habeas corpus proceeding, also falsely denied appellant raped her. Crystal stated she lied because she did not want appellant to go to prison for six years and was worried about her relationship with others in the deaf community.
Crystal continued to see appellant after he was released from prison and had a second child with him. Crystal admitted having falsely accused her stepfather of raping her.

B. Defense Case

A social worker, Diana Spencer, interviewed Lorene. During that interview, Lorene told Spencer she was arrested for "park[ing] in the wrong spot." Spencer checked the arrest report and learned Lorene was arrested for driving under the influence. Spencer concluded Lorene did not tell her the truth and was attempting to minimize the incident.
Julio Medina, the father of Lorene's son, testified Lorene falsely accused him of sexually molesting their then-six or seven-year-old son.
Henrieta, appellant's sister, testified that on June 10 to 13, 2004, appellant did not have large bruises, scratches or marks on his body.

DISCUSSION

A. Unavailable Witness

Prosecutrix Lorene did not appear at trial. Appellant argues the trial court erred when it allowed the prosecution to offer in evidence her testimony from a preliminary hearing. Appellant contends that contrary to the finding of the trial court, the prosecution did not show due diligence in attempting to secure Lorene's presence at trial. More particularly, he argues that in seeking Lorene's testimony the prosecution did not fully utilize the Uniform Act to Secure the Attendance of Witnesses from without the State in Criminal Cases (§ 1334 et seq.) (Uniform Act).

*34 1. Background,

By in limine motion filed on February 1, 2006, the prosecution sought to offer at trial the preliminary hearing testimony of Lorene. The prosecution noted it served Lorene in Colorado pursuant to the Uniform Act and arranged for her to fly to San Diego. Lorene, however, told the prosecution she would not testify at appellant's trial and did not use the airline ticket provided her. The prosecution argued it did everything possible under the Uniform Act to secure Lorene's attendance. It asked the trial court to find her unavailable and allow the introduction of her preliminary hearing testimony pursuant to Evidence Code section 240, subdivision (a)(4).
Appellant opposed the motion, stating the prosecution failed to show due diligence in securing Lorene's attendance at trial. Appellant argued the prosecution failed to make full efforts under the Uniform Act to secure Lorene's attendance, including asking that the Colorado court, as allowed by the Uniform Act, place her in custody and deliver her to a California officer to assure her attendance at trial.
At a hearing on the motion, the prosecutor offered evidence and observations concerning the efforts made to secure Lorene's testimony at trial. The prosecutor noted that on November 17, 2004, Lorene voluntarily came to California to testify at a preliminary hearing. As the matter approached trial, however, Lorene, living in Colorado, informed the prosecution she would not come to California to testify at appellant's trial. Lorene told the prosecution she had "emotional issues" with the case. The prosecution was forced to dismiss its case, refile and begin formal efforts to secure Lorene's attendance at trial. At arraignment in the new case, the parties stipulated to a bindover and the matter was set for trial on December 20, 2005.
On November 2, 2005, the Superior Court of San Diego County, pursuant to the prosecution's request and as required by the Uniform Act, certified to the Criminal District Court of Colorado that Lorene was a material witness in appellant's prosecution and asked pursuant to the act that she be compelled to attend and testify at his trial in San Diego on December 21, 2005.[2] While the Uniform Act allows the procedure, the certificate did not request that Lorene be taken into immediate custody and delivered to a California officer to secure her attendance at trial. The prosecutor explained at the in limine hearing that pursuant to Code of Civil Procedure section 1219, subdivision (b), that because Lorene was the victim of a sexual assault, it was precluded from placing her in custody to secure her appearance at trial.
Lorene was summoned to the Colorado court, appeared and was ordered to attend appellant's trial. However, from the court clerk's office in Colorado, Lorene called the San Diego County District Attorney investigator assigned to secure her attendance. She told him she would not appear in California to testify.
On December 15, 2005, the trial date was continued to January 31, 2006.
On December 23, 2005, the San Diego County Superior Court, at the prosecution's request and pursuant to the Uniform Act, again certified to the Criminal District Court of Colorado that Lorene was a material witness in appellant's case and asked that she be compelled to attend the trial *35 set for January 31, 2006. As to this second attempt to secure Lorene's attendance pursuant to the Uniform Act, the prosecution, fearful Lorene would abscond to avoid service, did not contact her and asked the authorities in Colorado to approach her surreptiously. The certificate again did not request that Lorene be taken into immediate custody and delivered to a California officer to secure her attendance at trial.
Pursuant to the California court's certification on January 20, 2006, a summons was served on Lorene by a legal research assistant of the Denver County District Attorney's Office. The affidavit of service indicated Lorene was, as required by the Uniform Act, tendered statutory fees and transportation allowances. Lorene appeared before the court in Colorado on January 20, 2006. The court found she was a necessary witness in appellant's prosecution and ordered her to appear and testify at appellant's trial on January 31, 2006, in California.
Lorene did not use the airline ticket provided her and by the time of trial did not appear in court in California.
The trial court noted a summons was issued by the court in Colorado requiring Lorene appear for appellant's trial in California. The court found Lorene testified at appellant's preliminary hearing and appellant had an adequate opportunity to confront and cross-examine her. The court also found Lorene was unavailable and the prosecution used due diligence in attempting to secure her attendance at trial. The court ruled that her preliminary hearing testimony was admissible at trial.

2. Law

a. Confrontation, Hearsay and Unavailable Witnesses

A defendant has a federal and state constitutional right to confront witnesses. (U.S. Const., Sixth Amend.; Cal. Const., art. I, § 15.) The right, however, is not absolute. If a witness is unavailable at trial and has testified at a previous judicial proceeding against the defendant and was subject to cross-examination by that defendant, the previous testimony may be admitted at trial. (People v. Wilson (2005) 36 Cal.4th 309, 340-341, 30 Cal.Rptr.3d 513, 114 P.3d 758.)
Evidence Code section 1291, subdivision (a)(2), states that former testimony is admissible if the declarant is unavailable and "[t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."
Evidence Code section 240, subdivision (a)(4), states that a declarant is "unavailable as a witness" if the declarant is "[a]bsent from the hearing and the court is unable to compel his or her attendance by its process." Evidence Code section 240, subdivision (a)(5), states that a declarant is "unavailable as a witness" if the declarant is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process."
Reasonable diligence within the meaning of Evidence Code section 240, subdivision (a)(5), means the proponent has made "`"untiring efforts in good earnest, efforts of a substantial character"'" to secure the attendance of the witness. (People v. Wilson, supra, 36 Cal.4th at p. 341, 30 Cal.Rptr.3d 513, 114 P.3d 758.) Factors relevant to deciding whether such efforts have been made include the timeliness of the effort, the importance of the testimony and whether all reasonable means were used to secure the attendance of the witness. (See Ibid.)
*36 When the facts are not in dispute, a reviewing court decides the question of reasonable diligence de novo. (People v. Cromer (2001) 24 Cal.4th 889, 900-901, 103 Cal.Rptr.2d 23,15 P.3d 243.)

b. Uniform Ad

The Uniform Act is a device for securing the attendance of out-of-state witnesses in criminal cases. As relevant here, if a person in Colorado is a material witness in a prosecution in California, a California court may issue a certificate so finding. The certificate is presented to a court in the county in Colorado in which the witness is found. (§ 1334.3, subd. (a)[3]; Col. Rev. Stats. § 16-9-202, subd. (1)-(3).[4])
On presentation of the certificate, the court in Colorado sets a time for hearing *37 and orders the witness to appear at that hearing. If the court determines the witness is material and necessary and that it will not cause undue hardship to the witness to be compelled to attend and testify in California, the court in Colorado issues a subpoena or summons directing the witness to appear for the trial in California. (§ 1334.3, subd. (a); Col. Rev. Stats., 16-9-202, subds. (1)-(2).)
California's certificate may ask that the witness be taken into immediate custody and delivered to a California officer to assure the witness's attendance at trial. In such a case the judge in Colorado may, in lieu of notification of the hearing in Colorado, direct the witness be brought before it. If at the hearing the Colorado court is satisfied of the "desirability of the custody and delivery" in lieu of a summons or subpoena, it may order the witness immediately taken into custody and delivered to a California officer. (§ 1334.3, subd. (a); Col. Rev. Stats. § 16-9-202, subd. (3).)
If the witness fails to appear as directed by the subpoena or summons, the witness "may be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court" of California. (§ 1334.3, subd. (a); Col. Rev. Stats. § 16-9-203, subd. (4).)
When a party knows of the out-of-state location of a witness and does not attempt to secure their presence by means of the Uniform Act, the witness is not unavailable within the meaning of Evidence Code section 240. (In re Terry (1971) 4 Cal.3d 911, 931, 95 Cal.Rptr. 31, 484 P.2d 1375; People v. Blackwood (1983) 138 Cal.App.3d 939, 945-947, 188 Cal.Rptr. 359.)

3. Discussion

Appellant argues the prosecution failed to exercise due diligence in attempting to secure the testimony of Lorene. Appellant contends that while the prosecution twice sought Lorene's presence at trial through the Uniform Act, it did not attempt to have her taken into custody in Colorado and turned over to a California officer even though she made clear her intention not to appear at appellant's trial. In response, the prosecution argues, as it *38 did below, that Code of Civil Procedure section 1219, subdivision (b), forbids utilization of the custody provisions of the Uniform Act against a sexual assault victim. The prosecution argues, therefore, it did all that was reasonably possible to secure Lorene's testimony and the trial court properly found her unavailable.
Code of Civil Procedure section 1219, subdivision (a), states: "Except as provided in subdivisions (b) and (c),[[5]] when the contempt consists of the omission to perform an act which is yet in the power of the person to perform, he or she may be imprisoned until he or she has performed it, and in that case the act shall be specified in the warrant of commitment."
Subdivision (b) of that section states: "Notwithstanding any other law, no court may imprison or otherwise confine or place in custody the victim of a sexual assault for contempt when the contempt consists of refusing to testify concerning that sexual assault."
The issue here is whether in seeking the attendance at trial of an out-of-state victim of a sexual assault Code of Civil Procedure section 1219, subdivision (b), forbids a California court from requesting, pursuant to the Uniform Act, that the victim be taken into immediate custody and delivered to a California state officer to assure the victim's attendance in this state. We conclude section 1219, subdivision (b), does not so limit the power of a California court to utilize the custody and delivery provisions of the Uniform Act. We conclude that based on its language and history Code of Civil Procedure section 1219, subdivision (b), only restricts the power of a court to use incarceration through its contempt power as a means of securing testimony or punishing a contemptuous refusal to testify. The section does not affect the power of the court to order the victim of sexual assault be brought before it or to seek pursuant to the Uniform Act that a witness be taken into custody and delivered to a California officer to secure their attendance in this state.
We first note that Code of Civil Procedure section 1219, subdivision (b), deals with the court's contempt power and forbids the use of that power to place in custody a sexual assault victim who refuses to testify. The Uniform Act and its provision for immediately taking a witness into custody to assure their appearance for trial in California is not an exercise of the court's contempt power. Nor does the Uniform Act condition the taking of an out-of-state witness into custody on a refusal to testify or, indeed, on the refusal to do anything. By its express language Code of Civil Procedure section 1219, subdivision (b), does not forbid the utilization of the custody provisions of the Uniform Act to assure the attendance at trial of sexual assault victims.
Still, the Legislature has in Code of Civil Procedure section 1219, subdivision (b), and in other code provisions indicated a strong intent to protect victims of sexual assault from additional psychological trauma. (See, e.g., Stats.1984, ch. 1644, § 3.) Further, while section 1219, subdivision (b), is a restriction on the court's power to place a person in custody for acts of contempt, and while it deals with actual refusals to testify, neither of which are factors in the application of the custody provisions of the Uniform Act, the act nonetheless provides for placing the victim in a form of custody. Often the need for such custody arises from what is essentially a refusal to testify. That being the case, it is useful to explore more closely the Legislature's intent *39 in enacting section 1219, subdivision (b).
Code of Civil Procedure section 1219, subdivision (b), was enacted in 1984. (Stats.1984, ch. 1644, § 2.) The new subdivision was added as part of Senate Bill No. 1678 after a trial court placed a 12-year-old girl in juvenile hall for several days when she refused to testify against her allegedly sexually abusive stepfather. (Sen. Bill No. 1678 (1983-1984 Reg. Sess.) § 2.) The concern was that many sexual assault victims testify only after being threatened with contempt and imprisonment. It was argued that such threats heighten the psychological trauma the victim has already experienced. (Assem. Com. on Crim. Law and Public Safety, analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as amended June 18, 1984, p. 2; Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as amended June 18, 1984; Sen. Republican Caucus, analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.), p. 2; Sen. Com. on Judiciary, report on Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as amended Apr. 26, 1984, p. 2.)
The act did not affect a trial court's power to find a sexual assault victim in contempt based on a refusal to testify. The act left in place the court's power to find victims in contempt and to impose sanctions other than imprisonment. Indeed, enacted with Code of Civil Procedure section 1219, subdivision (b), was an amendment adding subdivision (d) to Code of Civil Procedure section 128. (Stats. 1984, ch. 1644, § 1.) That subdivision stays for three days the imposition of any contempt sanction imposed based on a sexual assault victim's refusal to testify. (See also Assem. Com. on Crim. Law and Public Safety, analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.) § 2; as amended June 18, 1983, p. 2; Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as amended June 18, 1984; Sen. Republican Caucus, analysis of Sen. Bill No. 1678 (1983-1984 Reg. Sess.), p. 2; Sen. Com. on Judiciary, report on Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as amended Apr. 26, 1984, p. 2.)
Code of Civil Procedure Section 1219, subdivision (b), states that a court may not "imprison or otherwise confine or place in custody" for contempt a sexual assault victim who refuses to testify. At first this provision appears broad and might suggest the Legislature meant to forbid any type of custody even that necessary to secure a witness's attendance at trial. A review of the legislative history of section 1219, subdivision (b), however, makes clear that the section refers only to sexual assault victims being taken into custody as the result of a finding of contempt after a refusal to testify.
As originally written, Senate Bill No. 1678 merely stated a court could not "imprison" the victim for contempt when the contempt arose from a refusal to testify. (Sen. Bill No. 1678 (1983-1984 Reg. Sess.), as introduced Feb. 9, 1984.) Later, the bill was amended to add the "or otherwise confine or place in custody" language that now appears in Code of Civil Procedure section 1219, subdivision (b). (Sen. Amend, to Sen. Bill No. 1678 (1983-1984 Reg. Sess.), May 10, 1984.) This amendment was made because it was noted that minors under 16 years of age are not subject to "imprisonment in county jails." (Sen. Com. on Judiciary, report on Sen. Bill No. 1678 (1983-1984 Reg. Sess.), p. 3.) The clear intent, therefore, of the section is not to forbid any type of custody for any reason for a sexual assault victim but rather to forbid confinements of all types because of a finding of contempt arising from a refusal to testify.
*40 The refusal of a witness to appear in obedience of a subpoena and the refusal of a witness to testify once present are different forms of contempt that affect different institutional interests. The affront to a court, while serious in both instances, is more serious when a witness chooses to ignore the court's process. There is nothing in section 1219, subdivision (b), or its history suggesting a sexual assault victim is excused from the obligation to appear when lawfully summoned. Our Supreme Court has concluded that victims of sexual assault have a duty to testify when subpoenaed. (People v. Smith (2003) 30 Cal.4th 581, 624, 134 Cal.Rptr.2d 1, 68 P.3d 302.) Inherent in the section and manifest in its history is that failures not only to appear but to testify may be punished. Victims of sexual assaults simply may not be incarcerated as a means of compelling their testimony.
The law provides in a variety of contexts and in a variety of ways for witnesses who disobey subpoenas to be taken into custody and brought before the court. (See § 881, subds. (b), (c); Evid.Code, §§ 1331, 1332; Code Civ. Proc., § 1993; People v. Palmer (1989) 207 Cal.App.3d 663, 671, 255 Cal.Rptr. 55; 2 Witkin, Cal. Evidence (4th ed. 2000) Witnesses, § 31, Arrest, p. 286; Cal.Criminal Law Practice and Procedure, § 4.1, 4.47, 58.23.) We find nothing in Code of Civil Procedure section 1219, subdivision (b), which precludes use of such means to assure the attendance at trial of sexual assault victims.
The custody and delivery provision of the Uniform Act is a device to assure the attendance of a witness at trial and not a punishment for contempt arising from a refusal to testify. That being the case, section 1219, subdivision (b), did not forbid the use of the act's custody and delivery provisions to secure Lorene's attendance at trial.
Having decided that Code of Civil Procedure section 1219, subdivision (b), did not foreclose the prosecution from utilizing the custody provisions of the Uniform Act to secure Lorene's attendance at trial, the ultimate question is whether the failure to do so in this case amounts to a lack of reasonable diligence. We conclude that it does.
Of course, in utilizing the Uniform Act the People need not in every case ask that their witness be taken into custody in order to show reasonable diligence. In some cases maintaining contact with a cooperative out-of-state witness who has shown a clear intention to return to California to testify may be enough. Under other circumstances, e.g., when the witness is reluctant to travel to California but there is no reason to believe the witness will disobey a summons, reasonable diligence may require utilization only of that part of the Uniform Act resulting in an order that a witness appear in California for trial. Under other circumstances reasonable diligence may require the prosecution request the witness be taken into immediate custody and delivered to a California officer.
In this case the prosecution was on notice that it was highly probable Lorene would not return to California even if ordered by a court to do so. By telephone she informed the prosecutor she was not going to appear. With regard to its second request under the Uniform Act, the prosecution took care not to inform Lorene that it was again seeking her attendance. It did so because it was afraid she was so opposed to returning to California she would avoid service. Had the prosecution understood that Code of Civil Procedure section 1219, subdivision (b), did not forbid use of the custody provisions of the Uniform Act, it would, in all probability, have requested she be taken immediately into *41 custody and delivered to a California officer.
Lorene was an essential witness in this case, her appearance was crucial. The prosecution did not, under the circumstances of this case, use every reasonable means to secure her attendance and, therefore, did not exercise reasonable diligence. The trial court therefore erred in finding that she was unavailable and allowing the use of her preliminary hearing testimony at trial.
Erroneously allowing the use of Lorene's preliminary hearing testimony at trial was by any test prejudicial. Lorene was not simply an important witness, she was an indispensable witness. Had the trial court not erroneously admitted her preliminary hearing testimony, there would have been no admissible evidence that a sexual assault occurred. The judgment must therefore be reversed.

B. Evidence of Prior Sexual Offenses

Appellant argues the trial court erred when it admitted pursuant to Evidence Code section 1108, subdivision (a), the testimony of Crystal that appellant sexually assaulted her. Appellant argues the admission of such evidence to show a propensity to commit the charged offenses denied him his right to due process. He argues in any case the trial court erred in admitting the evidence over his objection that the evidence was more prejudicial than probative. While we have reversed the judgment on other grounds, we consider this issue in the event of a retrial.

1. Background

Prior to trial the prosecution moved, pursuant to Evidence Code section 1108, for the admission of evidence of appellant's sexual offenses against Crystal. It noted that in 1996 appellant was charged with multiple counts of assault and sexual assault and that in 1997 he pled guilty to one count of forcible rape. Sentenced to six years in prison, appellant repeatedly contacted Crystal and she eventually recanted her accusations of assault and rape. Petitions for habeas corpus followed but were denied. When released, appellant was required to register as a sex offender pursuant to section 290. In 2003 he was convicted of a failure to register. As a condition of parole, he was ordered not to have contact with Crystal. In 2004 the two had another child.
Appellant opposed the prosecution's motion to admit evidence of the prior sexual offenses. He noted that in 1999 Crystal submitted a declaration and testified at a hearing on appellant's habeas corpus declaration that she had falsely accused appellant of rape. Appellant also noted that before Lorene made her accusation against him, she and Crystal were best friends. Appellant argued admitting evidence of appellant's prior sexual offenses would result in undue prejudice to the defense and confuse and mislead the jury. He requested the evidence be excluded pursuant to Evidence Code section 352.
A hearing was held on the motion. Crystal testified and reviewed the history of her relationship with appellant. She stated that from the beginning of the relationship appellant abused and sexually assaulted her. She stated he sexually assaulted her on several occasions in 1997 in San Diego, and she reported the crimes to the police. She was aware appellant was charged with those offenses and that he pled guilty to one count of rape. Crystal admitted recanting under oath her claims of rape but stated appellant did rape her. She stated she was afraid when appellant was released from prison he would assault her. She also stated the deaf community to which both she and appellant belonged was small, and she believed her life and *42 lives of her two sons would be easier if she recanted her allegations. Crystal stated appellant raped her.
The trial court granted the prosecution's motion and admitted Crystal's testimony.

2. Discussion

Evidence Code section 1108, subdivision (a), provides that when a defendant is accused of a sexual offense, evidence of that defendant's commission of another sexual offense is admissible unless the evidence is made inadmissible under the provisions of Evidence Code section 352. Appellant contends the admission of such evidence to prove a predisposition to commit sexual offenses denies him due process. It does not. (People v. Falsetto, (1999) 21 Cal.4th 903, 911-925, 89 Cal. Rptr.2d 847, 986 P.2d 182; People v. Quintanilla (2005) 132 Cal.App.4th 572, 578-579, 33 Cal.Rptr.3d 782.)
Appellant further argues that whatever the constitutional validity of Evidence Code section 1108, subdivision (a), the trial court abused its discretion when it denied the motion to exclude the evidence as more prejudicial than probative within the meaning of Evidence Code section 352.
In admitting evidence of prior sexual offenses pursuant to Evidence Code section 1108, subdivision (a), the trial court considers the nature, relevance and remoteness of the uncharged offense, the degree of certainty that the prior offense was committed, the likelihood admission of the offense will confuse, mislead or distract the jury from its primary inquiry, the burden of the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to outright admission, such as excluding irrelevant and inflammatory details. (People v. Falsetto, supra, 21 Cal.4th at p. 917, 89 Cal. Rptr.2d 847, 986 P.2d 182.)
The trial court has broad discretion in determining whether the probative value of evidence outweighs any potential it may have to prejudice a party or to confuse or mislead the jury. It is only when the exercise of that discretion is "arbitrary, capricious or patently absurd" that we reverse the trial court's decision to admit the evidence. (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124, 36 Cal.Rptr.2d 235, 885 P.2d 1.)
The trial court here did not abuse its discretion in admitting Crystal's testimony. The sexual offenses committed against Crystal were reasonably similar to and no more serious than those charged here. While the crimes against Crystal were committed in 1999 and the charged crimes occurred in 2004, for much of that interval appellant was in prison. The lack of additional sexual offenses in that period says nothing about his predisposition to commit such crimes. While it is true Crystal recanted her accusations against appellant, appellant pled guilty to a sexual offense against Crystal and a jury could reasonably decided whether he committed the crime to which he pled guilty. The evidence concerning appellant's conviction of raping Crystal did not create a burden on the defense greater than that which arises in defending against any claim of a relevant uncharged act. The trial court did not abuse its discretion in admitting Crystal's testimony.

DISPOSITION
The judgment is reversed.
WE CONCUR: HALLER and AARON, JJ.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] While the trial date was December 20, 2005, Lorene's attendance was requested for December 21, 2005.
[3] Section 1334.3, subdivision (a), states: "If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or grand jury investigations in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation, a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county of such other state in which the witness is found.

"If the certificate recommends that the witness be taken into immediate custody and delivered to an officer of this state to assure his or her attendance in this state, the judge may direct that the witness be forthwith brought before him or her. If the judge is satisfied of the desirability of the custody and delivery, for which determination the certificate shall be prima facie proof, he or she may order that the witness be forthwith taken into custody and delivered to an officer of this state. This order shall be sufficient authority to the officer to take the witness into custody and hold him or her unless and until he or she may be released by bail, recognizance, or order of the judge issuing the certificate.
"If the witness is subpoenaed to attend and testify in this state, he or she shall be tendered the sum of ten cents ($0.10) for each mile necessarily traveled if the witness elects surface travel or the minimum round trip scheduled airlines fare plus twenty cents ($0.20) a mile for necessary surface travel at either end of the flight if the witness elects air travel, and except as provided in subdivision (b), a per diem of twenty dollars ($20) for each day that he or she is required to travel and attend as a witness. The judge of the court in which the witness is ordered to appear shall order the payment of witness fees authorized by law for each day the witness is required to attend the court plus reimbursement for any additional expenses of the witness which the judge of the court shall find reasonable and necessary. A witness who has appeared in accordance with the provisions of the subpoena shall not be required to remain within this state a longer period of time than the period mentioned in the certificate, unless otherwise ordered by the court. If the witness fails without good cause to attend and testify as directed in the subpoena, he or she shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state."
[4] Colorado Revised Statutes section 16-9-202, subdivisions (1)-(3), states: "(1) If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of the court that there is a criminal prosecution pending in such court or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of the certificate to any judge of a court of record in the county in which such person is, the judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.

"(2) If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending or grand jury investigation has commenced or is about to commence, and of any other state through which the witness may be required to pass by ordinary course of travel, will give to him protection from arrest and the service of civil and criminal process in connection with matters which arose before his entering into that state under the summons, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. In any such hearing, the certificate shall be prima facie evidence of all the facts stated therein.
"(3) If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, the judge may, in lieu of notification of the hearing, direct that the witness be forth-with brought before him for the hearing; and the judge at the hearing being satisfied of the desirability of such custody and delivery, for which determination the certificate shall be prima facie proof of such desirability, in lieu of issuing subpoena or summons, shall order that said witness be forthwith taken into custody and delivered to an officer of the requesting state.
"(4) If the witness, who is summoned as above provided, after being paid or tendered by some properly authorized person the sum of ten cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and twenty dollars for each day that he is required to travel and attend as a witness, fails without good cause to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this state."
[5] Section 1219, subdivision (c), places a similiar restriction on the power of the court to confine for contempt in refusing to testify victims of domestic violence.